LABRYANT KING,                    )
                                  )
            Petitioner,           )
                                  )
v.                                )          No. 3:03-0572
                                  )          Judge Trauger
WARDEN FRED J. RANEY,             )
                                  )
            Respondent.           )

## MEMORANDUM

## INTRODUCTION

The petitioner, proceeding *pro se* and *in forma pauperis*, is a prisoner in the Northwest

Correctional Complex (NWCX) in Tiptonville, Tennessee.  He brings this action under 28 U.S.C.

§ 2254, naming Fred J. Raney, formerly the Warden at NWCX,[1] as the respondent.

## INFORMATION
## AND
## BACKGROUND

The Montgomery County Grand Jury returned a 14-count drug-related indictment against

the petitioner on August 4, 1997.  (Add. 5, pp. 0004-0008)[2,3]  The indictment stemmed from a one-

year "sting" operation in the Lincoln Homes area in Clarksville, Tennessee that began in the late

summer of 1996.  (Add. 11, Ex. 8, p. 81)

The petitioner pled guilty in the Montgomery County Circuit Court on October 13, 1998 to

---

[1]  Mr. Tommy Mills replaced Mr. Raney as Warden at NWCX in June 2006 while this action was pending on appeal in the Sixth Circuit.

[2]  Addenda 1 through 4 were filed with Docket Entry No. 32.  Addenda 5 through 21 were filed with Docket Entry No. 88.

[3]  The respondent has failed to comply with Rule LR7.03(a), Local Rules of Court which provides that "[a]ll exhibits to pleadings shall be paginated progressively beginning with the principal document, and continuing through the last page of the document, including exhibits."  Where Bates' Stamp numbers appear on the bottom of the page, those are the numbers to which reference is made.

Count 7 of the indictment, *i.e.*, selling cocaine within one thousand (1,000) feet of a school in violation of Tenn. Code Ann. § 39-17-417. (Add. 5, p. 0032; Add. 11, Ex. 2, pp. 6-9) The remaining thirteen (13) counts were dismissed. (Add. 5, p. 0034; Add. 11, Ex. 2, p. 9) The petitioner was sentenced under Tennessee's Drug-Free School Zone Act, Tenn. Code Ann. § 39-17-432, which increased the petitioner's offense level from a Class B felony under § 39-17-417 to a Class A felony. (Add. 11, Ex. 2, pp. 6-9) The petitioner was sentenced as a Range I offender to fifteen (15) years imprisonment. (Add. 5, p. 0034; Add. 11, Ex. 2, pp. 6, 9) Judgment entered on October 13, 1998. (Add. 5, pp. 0033-0034)

Having reserved the right to appeal a certified question of law challenging the constitutionality of § 39-17-432, the petitioner filed a notice of appeal on November 9, 1998. (Add. 5, p. 0035; Add. 11, Ex. 2, pp. 3, 6-7) The petitioner raised the following issues:

1) Whether in enacting § 39-14-432, the Tennessee legislature failed to use language in the statute that provided a clear meaning of what act was prohibited, what the elements of the offense were, and what *mens rea* was required (Add. 6, pp. 4-10);

2) Whether §§ 39-17-417 and 39-14-432 violate the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 8 of the Tennessee Constitution (Add. 6, pp. 10-12); and

3) Whether §§ 39-17-417 and 39-14-432 violate the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendment of the United States Constitution and Article I, Section 13 of the Tennessee Constitution (Add. 6, pp. 12-13).

The Tennessee Court of Criminal Appeals (Court of Criminal Appeals) dismissed the petitioner's appeal on July 1, 1999 because he "failed to properly reserve the right to appeal a certified question of law . . . ." (Add. 9, p. 2) The petitioner did not seek to appeal in the Tennessee Supreme Court.

2

(Docket Entry No. 1, ¶ 11(d), p. 3)

The petitioner filed a *pro se* petition for state post-conviction relief on October 14, 1999.

(Add. 3, pp. 26-32)  However, on July 12, 2003, while the state post-conviction proceeding was

ongoing, the petitioner filed the instant petition for federal *habeas corpus* relief.[4]  (Docket Entry No.

1)  The petitioner raised the following grounds for relief in his petition:

    1)      Whether the judgment entered against him is void (Docket Entry No. 1, pp. 8-9);

    2)      Whether his sentence is illegal (Docket Entry No. 1, pp. 9-10);

    3)      Whether the indictment was defective (Docket Entry No. 1, p. 10);

    4)      Whether § 39-17-432 is unconstitutional (Docket Entry No. 1, pp. 10-12); and

    5)      Whether he was selectively prosecuted (Docket Entry No. 1, pp. 12-13).

The respondent filed a motion for summary judgment and/or dismissal on September 13, 2003,

arguing that the petitioner had failed to exhaust his claims in state court.  (Docket Entry No. 30)  The

court granted the respondent's motion for summary judgment on December 31, 2003, denied the

petition for failure to exhaust, dismissed the case, and ruled that a Certificate of Appealability

(COA) would not issue.  (Docket Entry No. 43)

The petitioner filed a notice of appeal on January 30, 2004 challenging the dismissal of his

case for failure to exhaust.  (Docket Entry No. 44)  After initially dismissing the appeal for want of

prosecution (Docket Entry No. 48), the Sixth Circuit later reinstated it (Docket Entry No. 49),

granted the petitioner a COA (Add. 21), and appointed counsel (Docket Entry No. 50).

---

[4]  The petitioner filed the instant petition more than two (2) months before he filed his final amended state post-conviction petition.  (Add. 10, pp. 0026-0074)

On May 24, 2004, while the petitioner's federal claims were pending on appeal in the Sixth Circuit, the post-conviction court denied the petitioner's request for state post-conviction relief following a bifurcated evidentiary hearing (Add. 10, pp. 0083-0089, 0144; Add. 11, Ex. 10; Docket Entry No. 103). The petitioner filed a notice of appeal on June 7, 2004 (Add. 10, p. 0090), raising the following eleven (11) issues in his brief:

1) Whether the post-conviction judge was constitutionally qualified and competent to preside over those proceedings (Add. 12, pp. 1-6);

2) Whether the petitioner knowingly waived his right to a constitutionally qualified and competent post-conviction judge (Add. 12, pp. 6-8);

3) Whether the trial court had a duty to inquire into a known conflict of interest between the petitioner and the public defender assigned to the case (Add. 12, pp. 8-11);

4) Whether the evidence in the record preponderates against the post-conviction court's findings (Add. 12, pp. 11-14);

5) Whether the post-conviction court's opinion conflicts with and "misapprehends" prior decisions as well as propositions and principles of the law (Add. 12, pp. 14-21);

6) Whether the trial court's judgment is void (Add. 12, pp. 21-23);

7) Whether the trial court imposed an illegal sentence (Add. 12, pp. 24-25);

8) Whether the indictment was defective (Add. 12, pp. 25-29);

9) Whether § 39-17-432 violates the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (Add. 12, pp. 29-36);

4

10)     Whether § 39-17-417 is a lesser included offense of § 39-17-432 (Add. 12, pp. 36-39); and

11)     Whether the petitioner was deprived of his Fourteenth Amendment right to equal protection (Add. 12, pp. 39-43).

The Court of Criminal Appeals affirmed the judgment of the post-conviction court on June 1, 2005, following which the Tennessee Supreme Court denied his application for permission to appeal on December 19, 2005. (Add. 15, 17, 20) The petitioner did not seek a writ of *certiorari* in the United States Supreme Court.

On February 9, 2007, three-plus years after this court dismissed this action for failure to exhaust, the Sixth Circuit vacated the district court's judgment and remanded the case. (Docket Entry No. 66) In its Order of remand, the Sixth Circuit noted that, "during the pendency of this appeal, King fully exhausted his state-court remedies. Exhaustion is thus no longer a bar to a merits-adjudication of King's habeas claims."[5] (Docket Entry No. 65-66)

Following remand, the respondent was directed to file an answer, plead, or otherwise respond to the petition on the merits and to file a complete copy of the record of state proceedings.[6] (Docket Entry No. 71) The respondent filed an answer on April 23, 2007. (Docket Entry No. 84) The petitioner, in turn, filed a traverse on June 7, 2007, and, on June 15, 007, separate motions for judgment on the pleadings and for summary judgment (Docket Entry No. 95-96, 98).

## ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the

---

[5] State prisoners are required to exhaust their available state court remedies before seeking federal *habeas corpus* relief. 28 U.S.C. § 2254(b), (c); *see Rose v. Lundy*, 455 U.S. 509, 518, 520-522 (1982); *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002).

[6] Having moved to dismiss in 2003 because the petitioner failed to exhaust, the respondent had not responded to the merits of the petitioner's claims, nor had he filed a complete copy of the record of state proceedings.

5

Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA).  *See Martin v. Mitchell*, 280 F.3d 594, 602 (6ᵗʰ Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977).  Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003).  Moreover, under the AEDPA, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial of the case.  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The order in which the petitioner presents his grounds for relief is as previously indicated, *supra* at p. 3.  For continuity of analysis, the petitioner's grounds for relief will be addressed in the following sequence: **1)** defective indictment; **2)** illegal sentence; **3)** void judgment; **4)** selective prosecution; **5)** constitutionality of § 39-17-432.

6

## Defective Indictment

The petitioner asserts that the indictment was defective in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments because: **1)** it failed to give adequate notice of the exact offense charged; **2)** it deprived the court of certainty as to the proper judgment to enter; **3)** it allowed the imposition of an illegal and excessive sentence; **4)** § 39-17-432 is a substantive offense separate and distinct from the offenses enumerated in § 39-17-417, *i.e.*, failure to charge § 39-17-432 in the indictment precluded the court from entering a conviction under that section; and **5)** it failed to allege the requisite *mens rea*. (Docket Entry No. 1, p. 10)

The Court of Criminal Appeals addressed this issue on appeal from the judgment of the post-conviction court, ruling that this issue was waived because the "record . . d[id] not contain a copy of the indictment."[7] (Add 15, p. 6) The AEDPA places notable restrictions on a federal court's authority to grant *habeas corpus* relief to state prisoners. A *habeas corpus* court may only consider claims that the petitioner has raised previously in the state courts. *See* 28 U.S.C. § 2254(b); *Alley*, 307 F.3d at 385. A claim is deemed procedurally defaulted where, as here, the claim was presented to the state court, but rather than reaching the merits of the claim, the state court relied on an independent and adequate state ground, such as a state procedural rule barring review of the claim, in deciding the issue. *See Coleman v. Thompson*, 501 U.S. 722, 734-735 (1991).

The Sixth Circuit employs a four-part analysis when determining whether a claim is procedurally defaulted on procedural grounds such as waiver. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The court must: **1)** ascertain whether there is an applicable state procedural rule; **2)**

---

[7] In a footnote, the Court of Criminal Appeals noted that the petitioner "included what he purports to be a copy of his indictment in an Appendix to his brief," but ruled that "[d]ocuments attached to briefs are not cognizable as part of an appellate record." (Add. 15, p. 5 n. 3) However, "assuming for the sake of argument that the document included in the Defendant's Appendix [wa]s an accurate copy of his indictment . . . ," the Court of Criminal Appeals noted that it "ha[d] previously held in another case that an indictment containing substantially similar language satisfies the constitutional and statutory requirements." (Add. 15, p. 6 n. 3)

decide whether the state courts actually enforce the rule; **3)** determine whether the state procedural rule is an adequate state ground on which the State relies to foreclose review of a federal constitutional claim. *Id.* If the first three parts of the *Maupin* test are satisfied, then the petitioner must satisfy the fourth part, *i.e.*, that there was cause not to follow the rule and that he was actually prejudiced, or that a substantial miscarriage of justice will occur if the claim is not reviewed. *Id.*

As to the first part of the four-part test under *Maupin*, the waiver rule in effect in 1999 when the petitioner filed his notice of appeal provided that:

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . .

Tenn. Code Ann. § 40-36-106(g). Because there was an applicable state waiver rule in effect at the time the petitioner sought state post-conviction relief, the first part of the four-part *Maupin* test is satisfied.

Whether the state courts regularly followed the state's waiver rule, *i.e.*, the second part of the test under *Maupin*, is to be determined as of the time that the rule was applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005)(overruled on other grounds by *Bradshaw v. Richey*, 546 U.S. 74 (2005). A review of Tennessee case law shows that, when a record is incomplete as to an issue raised on appeal, Tennessee courts have consistently held for the last 20-plus years that the issue is waived. *See State v. Dellinger*, 79 S.W.3d 458, 484 (Tenn. 2003); *State v. Ballard*, 855 S.W.2d 557, 561 (Tenn. 1993); *State v. Groseclose*, 615 S.W.2d 142, 147 (Tenn.), *cert. denied*, 454 U.S. 882 (1981); *State v. Taylor*, 2006 WL 2206064 at * 2 (Tenn. Crim. App.); *State v. Ewerling*, 2005 WL 850843 at * 4 (Tenn. Crim. App.); *State v. Ware*, 2005 WL 2477528 at * 2 (Tenn. Crim. App.); *Myers v. State*, 2005 WL 154187 at * 5 (Tenn. Crim. App.); *State v. Jordan*, 2003 WL 22174291 at * 3 (Tenn. Crim. App.); *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999);

*State v. Young*, 1999 WL 1179574 at ** 4-5 (Tenn. Crim. App); *State v Walker*, 1994 WL 525566 at * 2 (Tenn. Crim. App.); *State v. Matthews*, 805 S.W.2d, 776, 783-784 (Tenn. Crim. App. 1990); *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990); *Bowman v. State*, 1989 WL 54811 at * 2 (Tenn. Crim. App.); *State v. Bailey*, 1991 WL 99525 at * 2 (Tenn. Crim. App.); *State v. Roberts*, 755 s.W.2d 833, 836 (Tenn. Crim. App. 1988); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1983); *State v. Wallace*, 664 S.W.2d 301, 302 (Tenn. Crim. App. 1983).  As shown above, the second part of the four-part test under *Maupin* is satisfied.

As to the third part of the four-part *Maupin* test, the Sixth Circuit has determined previously that Tennessee's waiver rule constitutes an adequate and independent rule established by state law precluding *habeas corpus* relief.  *See Hutchinson v.  Bell*, 303 F.3d 720, 738-39 (6th Cir. 2002).

As shown above, Tennessee's waiver rule satisfies the first three parts of the four-part test under *Maupin*.  Therefore, the court looks to whether the petitioner has shown cause and prejudice to excuse the procedural default, or that a substantial miscarriage of justice will result if the court does not review this claim.

To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard.  *Murray*, 477 U.S. at 488 (citations omitted).  To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, but it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions."  *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)).  Finally,

9

to demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who actually is innocent. *Murray*, 477 U.S. at 496. The fundamental-miscarriage-of-justice exception applies only in "extraordinary cases," *Id.*, and requires a petitioner to show that he is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The petitioner has made no effort to establish cause and prejudice to excuse waiver of this issue on appeal, nor does he assert that a substantial miscarriage of justice will result if the court does not address this issue on the merits. Consequently, the court finds that this claim is procedurally defaulted for the purposes of federal *habeas corpus* review. Even if it were determined that this claim is not procedurally defaulted, the petitioner still is not entitled to federal *habeas corpus* relief for the reasons explained below.

Although the petitioner sought relief under Sixth Amendment in his final post-conviction petition and supporting memorandum of law (Add. 10, pp. 0034-0035),[8] he did not raise this issue in the context of the Sixth Amendment on appeal from the judgment of the post-conviction court (Add. 12, p. 25-29). In other words, the petitioner's Sixth Amendment claim is unexhausted.

Claims that have not been raised in state court are unexhausted and ordinarily are dismissed without prejudice so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385 (citing *Rose*, 455 U.S. at 518. However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then the claim is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman*, 501 U.S. at 752-753.

---

[8] The record shows that the petitioner abandoned all of his claims except those presented in his final amended petition for post-conviction relief. (Docket Entry No. 103, p. 3)

Tennessee's post-conviction statute, Tenn. Code Ann. § 40-30-102, provides that a state prisoner must file a petition for post-conviction relief within one year of the date that his conviction becomes final on direct review, and that he may not file more than one petition. *Id*. at §§ (a), (c). A petitioner may, however, move to reopen a post-conviction proceeding that has been concluded if the motion is based on: **1)** a final ruling of an appellate court establishing a new constitutional right that was not recognized at the time of trial; **2)** new scientific evidence that establishes the petitioner actually is innocent; **3)** a sentence that was enhanced because of a previous conviction in with the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid; and **4)** if the facts underlying the claim, if true, provide clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced. Tenn. Code Ann. §§ 40-30-117(a)(1)-(a)(4).

Because the petitioner has filed one post-conviction petition, he may not file another. Moreover, none of the "limited circumstances" provided in §§ 40-30-117(a)(1)-(a)(4) apply to this claim. Therefore, the motion-to-reopen provision in § 40-30-102(c) is inapplicable. For these reasons, the petitioner's Sixth Amendment claim is procedurally defaulted under state law. The next question is whether the petitioner's Sixth Amendment claim is procedurally defaulted for purposes of federal *habeas corpus* review

Although exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine intended to promote comity between the states and the federal government by giving the states the initial opportunity to pass on and correct alleged violations of a prisoner's federal rights. *Granberry v, Greer*, 481 U.S. 129, 133 (1987). As previously noted, for the court to consider a claim that is procedurally defaulted under state law, the petitioner must demonstrate both "cause" and "prejudice" to excuse the default or that a miscarriage of justice will result if the claim is not reviewed. As established, *supra* at p. 10. the petitioner makes no effort to establish "cause" and "prejudice," nor

11

does he argue that a miscarriage of justice will occur if the court does not address his Sixth Amendment claim. Accordingly, the court finds that the petitioner's Sixth Amendment claim is procedurally defaulted for purposes of federal *habeas corpus* review.

As to the petitioner's claims under the Fifth and Fourteenth Amendments, the Fifth Amendment to the United States Constitution prohibits the state from depriving any person of "life, liberty, or property, without due process of law . . . ." *U.S. Const.* amend. V. The Fourteenth Amendment to the United States Constitution also prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law . . . ." *Id.* amend. XIV, § 1. Due process has a procedural component and a substantive one. *Rosales-Garcia v. Holland*, 238 F.3d 704, 722 (6th Cir. 2001)(overruled on other grounds by *Thomas v. Rosales-Garcia*, 534 U.S. 1063 (2001)). The procedural due process component, which is at issue here, requires that the government provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The petitioner argues that the indictment did not provide notice of the offense charged. The indictment charges the petitioner with selling cocaine within 1,000 feet of a school in violation of § 39-17-417. (Add. 5, p. 0005) A review of the statutes at issue shows that § 39-17-432 was identified as applicable under § 39-17-417 in "Section to Section References" portion of § 39-17-417, and that § 39-17-417 was identified as subject to § 39-17-432(b) in the body of the latter statute. Because each statute gave notice of the applicability of the other, the petitioner was on notice that he was subject to the provisions of both.

In addition to each statute referencing the applicability of the other, the record shows that the petitioner had actual notice that § 39-17-432 was to be applied in his case. The transcript of the

12

motions hearing held on June 12, 1998 reveals that the applicability of §§ 39-17-417 and 39-17-432 were addressed at length in the petitioner's presence (Add. 11, Ex. 7, pp. 7-30), and the transcript of the plea hearing on October 13, 1998 reveals that the petitioner testified that he understood he was pleading guilty under § 39-17-432. (Add. 11, Ex. 2, pp. 3, 6-9). Defense counsel also testified during the March 4, 2003 partial post-conviction hearing that she discussed the applicability of § 39-17-432 with the petitioner. (Add. 11, Ex. 10, pp. 25-26).

As reasoned above, the court finds that the indictment provided notice reasonably calculated to appraise the petitioner of the fact that § 39-17-432 applied in his case.

The petitioner argues next that the indictment deprived the trial court of certainty as to the judgment to enter. The record shows that there was no question in the trial judge's mind as to the applicability of § 39-27-432 to the charge under § 39-17-417. On the contrary, the motions hearing and plea hearing referenced in the paragraph above show that the trial judge had a clear understanding of the issue. (Add. 11, Ex. 2, pp. 3, 6-9; Ex. 7, pp. 24-30)

Next, the petitioner argues that his sentence is illegal. As discussed in detail, *infra* at pp. 15-17, the petitioner's sentence is not illegal.

The petitioner argues next that § 39-17-432 is a substantive offense separate and distinct from the offenses enumerated in § 39-17-417 and, as such, failure to charge § 39-17-432 in the indictment precluded the trial court from entering a conviction under that section. This claim amounts to a challenge to the interpretation and/or application of state law. The district court may not grant a writ of *habeas corpus* where the underlying claim is based on the improper interpretation and/or application of state law even if the court determines that the state courts interpreted and/or applied state law improperly. *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003).

13

The petitioner's final argument in the context of this claim is that the indictment failed to allege the required *mens rea*. Count 7, to which the petitioner pled guilty, reads as follows: "**LABRYANT KING a/k/a MARK** unlawfully, feloniously and knowingly did sell a controlled substance, to-wit: over .5 gms. of Cocaine . . . **within 1,000 feet of the real property that comprises a public or private elementary school, middle school or secondary school** in violation of TCA 39-17-417 . . . ." (Add. 5, p. 0005)(bold in the original) The "knowing" *mens rea* under § 39-17-417 is accurately reflected in the indictment. *Id*. at § (a) To the extent that the petitioner is referring to the absence of a *mens rea* in § 39-17-432, that statute merely enhances the offense under § 39-17-417 when the criminal conduct occurs within 1,000 feet of a school. The "knowing" *mens rea* under § 39-17-417 does not change when § 39-17-432 is applied.

As reasoned above, the petitioner has failed to establish that the indictment against him was defective. Accordingly, the petitioner is not entitled to federal *habeas corpus* relief on this ground.

### Certificate of Appealability

Where a district court denies a *habeas corpus* petition on procedural grounds, a COA will issue only under the following conditions: **1)** "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right"; and **2)** "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where, as here, the district court also denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being, once again, whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. The court finds that, not only would jurists of reason not debate whether the court was correct in its procedural

determinations pertaining to this claim, the petitioner also has not made a substantial showing of the denial of a constitutional right. Accordingly, a COA will not issue on this claim.

### Illegal Sentence

In this ground for relief, the petitioner argues that his sentence is illegal in violation of his Fifth and Fourteenth Amendment rights because: **1)** the fifteen years for a Class B felony exceeds the expressed statutory mandate of 12 years under Tennessee's Sentencing Reform Act of 1989; and **2)** the Tennessee Sentencing Reform Act of 1989 is unconstitutional on its face, and as applied in this case, because it "mandates" that the authority to sentence be placed solely within the judge's discretion based on his factual determinations, *i.e.*, the act allowed the judge to enhance the petitioner's sentence beyond the statutorily prescribed maximum, and allowed for an "impermissible felony class enhancement." (Docket Entry No. 1, p. 9)

The Court of Criminal Appeals addressed this issue on the merits on appeal from the judgment of the post-conviction court. In its opinion, the Court of Criminal Appeals determined that the statutory offense to which the petitioner pled guilty was a Class B felony under § 39-17-417(c)(1) that carried a sentence of 8 to 12 years under Tenn. Code Ann. § 40-35-112(a)(2). (Add. 15, p. 5) The Court of Criminal Appeals also determined that, under 39-17-432(b), because the sale was made within 1,000 feet of a school, the petitioner's offense was punishable at one (1) classification higher than provided under § 39-17-417. (Add. 15, p. 5) Finally, the Court of Criminal Appeals determined that the Range I sentence for Class A felony is fifteen to twenty-five years under Tenn Code Ann. 40-35-112(a)(1). Based on its analysis of Tennessee law, the Court of Criminal Appeals determined that the petitioner's sentence was not illegal. (Add. 15, p. 5)

As previously established, *supra* at p. 6, where, as here, the state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of

Case 3:03-cv-00572   Document 104   Filed 08/27/07   Page 15 of 26 PageID #: 1258

correctness by clear and convincing evidence. The petitioner has not rebutted the presumption of correctness by clear and convincing evidence or otherwise. Moreover, the Court of Criminal Appeals' conclusions of law are supported by the court's own review of the statutes in effect in 1998, *i.e.*, the petitioner's sentence under the law then in effect was not illegal.

Notwithstanding the foregoing, a plain reading of the first part of the petitioner's claim, *i.e.*, that his sentence is excessive under the Tennessee Sentencing Reform Act of 1989, is that the Tennessee courts misapplied Tennessee law. As previously established, *supra* at pp. 13-14, the district court may not grant a writ of *habeas corps* where the underlying claim is based on the improper interpretation and/or application of state law.

The next part of the petitioner's argument is that the Sentencing Reform Act of 1989 is unconstitutional on its face and as applied in his case. Although the petitioner alleged in his brief on appeal from the judgment of the post-conviction court that the sentence deviated from the Sentencing Reform Act of 1989 (Add. 12, pp. 24-25), nowhere in his brief did the petitioner allege that the Sentencing Reform Act of 1989 itself was unconstitutional. For the reasons previously stated, *supra* at pp. 10-12, this argument is procedurally defaulted for purposes of federal *habeas corpus* review.

For the reasons explained above, the petitioner has failed to establish that his sentence was illegal. Consequently, the petitioner is not entitled to federal *habeas corpus* relief on this ground.

## Certificate of Appealability

The petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a COA will not issue on this claim.

## Void Judgment

The petitioner asserts that the judgment in his criminal case is void in violation of his rights under the Fifth and Fourteenth Amendments because: **1)** the sentence stated on the face of the

judgment form is in direct contravention of expressed statutory mandates pursuant to the Tennessee Sentencing Reform Act of 1989; and **2)** he was never charged with a violation of § 39-17-432 and, therefore, he should not have been sentenced under that statute. (Docket Entry No. 1, pp. 8-9)

First, a plain reading of this claim suggests that the petitioner's legal theory is, once again, that the Tennessee courts misapplied Tennessee law. As previously established, *supra* at pp. 13-14, the district court may not grant a writ of *habeas corps* where the underlying claim is based on the improper application of state law even if the court determines that the state courts did, in fact, apply the state laws improperly. Even assuming for the sake of argument that the petitioner's allegations are related to the federal dimension of his claim, the court already has determined that the indictment was not invalid and his sentence not illegal. Inasmuch as the judgment accurately reflects both the indictment under which the prisoner was charged , and the sentence that was imposed (Add 5, p. 34), the court finds that the judgment is not void.

As reasoned above, the petitioner has failed to establish that his judgment is void. Accordingly, the petitioner is not entitled to federal *habeas corpus* relief on this ground.

The petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a COA will not issue on this claim.

## Selective Prosecution

The petitioner asserts that he was prosecuted because of his race and gender in violation of his equal protection rights under the Fifth and Fourteenth Amendments. (Docket Entry No. 1, p. 12) Specifically, the petitioner argues that: **1)** the decision to prosecute him was based on "race, discrimination, and selection"; **2)** the agencies that conducted the sting operation that resulted in his prosecution did so in a predominately black neighborhood with the intent of "sentencing factor manipulation"; **3)** the sting operation that led to the criminal charges against him, including prosecution under § 39-17-432, were never directed at any other area of Clarksville; **4)** there were five (5) or more females charged as a result of the sting operation who were not prosecuted under § 39-17-432; and **5)** William Barnett, a similarly situated Caucasian who lived in Clarksville at the time was not prosecuted under the Drug-Free School Zone Act, but instead given the "option of copping out to a lesser offense of selling a controlled substance to a minor."

The equal protection component of the Fifth Amendment's due process clause and the equal protection clause of the Fourteenth Amendment provide that the state shall not make or enforce any laws that abridge the privileges or immunities of citizens of the United States, or deny persons equal protection of the laws to those within its jurisdiction. *U.S. Const.* amend. V and XIV, § 1. The purpose of the equal protection component of the Fifth Amendment and the equal protection clause of the Fourteenth Amendment is to ensure that "that all persons similarly situated [are] treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

To assert a Fourteenth Amendment equal protection claim, the petitioner must prove that a state actor purposefully discriminated against him because of his membership in a protected class.

18

*McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). The petitioner also must establish discriminatory intent or purpose. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1997). Further, the petitioner must demonstrate that he was similarly situated to others under the facts alleged. *Id. at* 270 n. 21. Analysis under the equal protection component of the due process clause of the Fifth Amendment uses the same analytical approach as under the Fourteenth Amendment. *Weinberger v. Weisenfeld*, 420 U.S. 636, 638 n. 2 (1975).

The crux of the petitioner's equal protection claim is that he was subjected to selective prosecution. To support a selective prosecution claim, the petitioner bears the "heavy burden" of establishing a *prima facie* case. *United States v. Peete*, 919 F.2d 1168, 1176 (6th Cir. 1990). Specifically, the petitioner must show that: **1)** others similarly situated to him were not prosecuted for conduct of the type forming the charge against him for which he claims to have been singled out; and **2)** the government's discriminatory selection of him has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights." *Id*.

The Court of Criminal Appeals addressed this claim on appeal from the judgment of the post-conviction court, ruling that "[t]here is no proof in the record to support this allegation and the Defendant is therefore entitled to no relief on this basis." (Add. 15, p. 6) However, apart from its general reference to "the record," the Court of Criminal Appeals provided no legal analysis in connection with its determination. Therefore, it falls to this court to review the claim for potential constitutional implications.

The petitioner's first argument is that the "decision to prosecute him . . . was based on race, discrimination, and selection." In that regard, the post-conviction court found that:

the particular area of Lincoln Homes was used because it was a high drug area. 'Nickel and dime' corner was a know[n] spot for the sale of drugs. The actual apartment used was selected by the staff [of the Clarksville Housing Development], not police as th[e] unit was within the area and also vacant. There was not police involvement in the selection of the apartment.

(Add. 10, p. 0087) The post-conviction court's conclusion is supported by the testimony of Wanda Mills, Executive Director of the Clarksville Housing Authority, and R.M. Gilleland, Special Agent with the Tennessee Bureau of Investigation (TBI). Agent Gilleland testified that the Lincoln Homes area was one of four (4) areas evaluated for the operation. (Add. 11, Ex. 8, p. 78) Ms. Mills and Agent Gilleland both testified that the Lincoln Homes area was chosen because of the historic drug problem in that area and the immediate availability of an apartment from which to conduct the operation. (Add. 11, Ex. 8, pp. 47- 108) Apart from the petitioner's unsupported statement to the contrary, there is nothing in the record that contradicts the testimony of Mills and Gilleland.

The petitioner's second argument is that the agencies that conducted the sting operation did so with the intent of "sentencing factor manipulation." Although the petitioner does not say so specifically, the court liberally construes the petitioner to allege that the area for the sting was chosen to take advantage of the sentencing enhancement factor under § 39-17-432 because the location was within 1,000 feet of a school.

Assuming without deciding that law enforcement officials are prohibited from knowingly setting up a drug sting operation within 1,000 feet of a school, both Ms. Mills and Agent Gilleland testified that the area was selected months before those involved in the operation became aware that the site was within one-thousand feet of a school. (Add. 11, Ex. 8, pp. 49, 60, 62, 80, 93-94, 96-97, 100) Once again, apart from the petitioner's unsupported allegation, there is nothing in the record that contradicts the testimony of Mills and Gilleland.

Next, of the thirty (30) individuals actually indicted under § 39-27-432, two (2) died during the pendency of the criminal proceedings, and four (4) went to trial. (Add. 11, Ex. 9) Of the remaining twenty-four (24) defendants who pled guilty, there is nothing in the record that supports the petitioner's allegation that the other defendants' sentences were enhanced under § 39-17-432. (Add. 11, Ex. 9) The record shows that many of the defendants were permitted to plead guilty to less serious offenses (Add. 11, Ex. 9) where, if the location of the operation had been selected for "sentence factor manipulation" as the petitioner alleges, that would not have been the case.

In his next argument, the petitioner asserts that sting operations such as the one that led to the criminal charges against him were never directed at any other area of Clarksville." The petitioner did not raise this argument in his brief on appeal from the judgment of the post-conviction court, nor did the Court of Criminal Appeals address it. (Add. 12, pp. 39-43) For reasons previously explained, *supra* at pp. 10-12, this argument is procedurally defaulted for the purpose of federal *habeas corpus* review.

The petitioner also argues that there were "five (5) or more females" apprehended in the sting operation who were not prosecuted under § 39-17-432, the inference being that § 39-17-432 was applied in his case because he was a male. Although the petitioner does not identify these five female defendants, the court assumes that they are Helen Ozen, Catina Webb, Veronica Jenkins, Shawanda Peacher, and Stephanie Powers. (Add. 11, Ex. 9) Each of these five female defendants received a lighter sentence than the petitioner – as did twelve (12) male defendants. (Add. 11, Ex. 9) Given that twelve (12) of the seventeen (17) defendants who received a lighter sentence than the petitioner were males, the petitioner cannot support a claim of gender discrimination in his case.

Finally, the petitioner argues that William Barnett, a Caucasian who lived in Clarksville, was not prosecuted under the Drug-Free School Zone Act, but instead was given the "option of copping out to a lesser offense of selling a controlled substance to a minor." (Docket Entry No. 1, pp. 12-13)

More particularly, the petitioner alleges that:

> The Montgomery County District Atty. General's office failed to prosecute Mr. William Barnett, a specific similarly situated [C]aucasian in Clarksville[,] Montgomery County who sold a controlled substance to a juvenile within less than 500 feet to a school[] and gave such individual the option to coping [*sic*] out to a lesser offense of selling a controlled substance.

(Docket Entry No. 1, pp. 12-13) To prevail on his equal protection/selective prosecution claim on this argument, the petitioner must establish that he and Bennett were treated differently.

Barnett pled guilty to possession with the intent to sell .5 grams or more of cocaine under Tenn. Code Ann. § 39-17-417(c)(1), and to possession with the intent to sell. 5 grams or more of cocaine to a minor under Tenn. Code Ann. § 39-17-417(k). *Barnett v. State*, 2003 WL 21077996 at * 1 (Tenn. Crim. App.). The offense under § 39-17-417(c)(1) was a Class B felony. Section 39-17-417(k), provided the following:

> A violation of this section or a conspiracy to violate this section where the recipient or the intended recipient of the controlled substance is under eighteen (18) years of shall be punished one (1) classification higher than provided in sections (b)-(i).

Bennett received an 8-year sentence for the conviction under § 39-17-417(c)(1) and a 15-year sentence for the conviction under § 39-17-417(k), the sentences to run concurrently. *Barnett*, 2003 WL at * 1.

As shown above, Barnett was treated differently than the petitioner – Barnett was treated more harshly. Whereas the petitioner received a 15-year sentence for his conviction arising from a single offense, Barnett received an 8-year and a 15-year sentence for his conviction arising from a similar offense. Moreover, as shown above, § 39-17-417(k) provided a one-level sentence enhancement identical to that applied in the petitioner's case under § 39-17-423. Because § 39-17-417(k) raised the offense under § 39-17-417(c)(1) to Class A felony, applying the enhancement

22

under § 39-17-432 would have had no additional effect on Bennett's sentence.

As reasoned above, the petitioner has failed to establish that his equal protection rights were violated. Accordingly, the petitioner is not entitled to federal *habeas corpus* relief on this ground.

## Certificate of Appealability

The petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a COA will not issue on this claim.

## Constitutionality of § 39-17-439

The petitioner alleges that § 39-17-432 violates his rights under the Fifth, Sixth, and Fourteenth Amendments because it violates *Apprendi*. The petitioner also alleges that § 39-17-432 is unconstitutional on its face because: **1)** it denied him adequate notice by indictment of the offense charged; **2)** it removed the jury from determining the facts which exposed him to a sentence in excess of that prescribed by the law; **3)** it added an additional element to a drug offense without expressly charging it or alleging the required *mens rea*; **4)** it allows a legislative scheme that hides away a core, aggravating, enhancing element without submitting it to the jury for determination; **5)** it is "vague and ambiguous" with respect to how the sentence is to be served; **6)** the language allows an impermissible day-for-day sentence in direct contravention of the 1989 Sentencing Reform Act; and **7)** it "allows the legislature to divest the Board of Parole of its inherent and autonomous power to grant parole . . . ."

As to the petitioner's first argument, the United States Supreme Court held in *Apprendi* that "[t]he Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 466. In *Apprendi*, the defendant entered a guilty plea to an offense that carried a possible prison term of five to ten years. At sentencing, the trial court concluded *sua sponte* that the defendant's conduct could be considered a racially-motivated

23

"hate crime" and, as such, the trial court imposed an enhanced 12-year sentence on him. The Supreme Court invalidated the punishment holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490.

*Apprendi* only applies where the penalty for a crime is increased beyond the statutory maximum. The sentence range in Tennessee for a Range I offender convicted of a Class A felony is 15-25 years. Tenn Code Ann. § 40-35-101. The petitioner's 15-year sentence was well within the statutory sentencing range. Accordingly, there was no *Apprendi* violation.

The petitioner argues next that § 39-17-432 denied him adequate notice by indictment of the offense charged. For reasons previously explained, *supra* at pp. 7-15, this argument is without merit.

The petitioner argues that § 39-17-432 deprived the jury of its traditional fact-finding role. The petitioner pled guilty; there was no jury. Moreover, as previously discussed, *supra* at p. 13, the petitioner testified before the trial judge, the finder of fact in a guilty plea, as to those facts necessary to impose the sentence that the petitioner received.

The petitioner argues that § 39-17-432 added an element to a drug offense without expressly charging it or alleging the required *mens rea*. For reasons previously explained, *supra* at p. 14, this claim is without merit.

The petitioner argues that § 39-17-432 hides a core, enhancing element without submitting it to the jury. As already noted above, the petitioner pled guilty. There was no jury. Moreover, as previously established, *supra* at p. 13, the petitioner testified to the facts required to sentence him under § 39-17-432. The provision used to enhance the petitioner's sentence was not hidden from the trier of fact.

The petitioner argues that § 39-17-432 is vague and ambiguous with respect to how the

24

sentence was to be served. For reasons previously explained, *supra* at p. 13, this claim is without merit.

Finally, as to the petitioner's last two arguments, *i.e*, that § 39-17-417 allows for a sentence in violation of the Sentencing Reform Act of 1989, and that it allows the legislature to divest the Parole Board of its authority to grant parole, both arguments pertain to the manner in which Tennessee law is interpreted and/ or applied. For reasons previously explained, *supra* at pp. 13-14, such claims do not entitle a petitioner to federal *habeas corpus* relief

As shown above, the petitioner has failed to establish that § 39-17-432 violates *Apprendi* or that it is unconstitutional on the grounds alleged. Accordingly, the petitioner is not entitled to federal *habeas corpus* relief on this ground.

### Certificate of Appealability

The petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a COA will not issue on this claim. *Slack*, 529 U.S. at 484.

### CONCLUSION

As reasoned herein, the petitioner has failed to establish that he is entitled to federal *habeas corpus* relief on any of the grounds alleged. As it is clear from the record before the court that no evidentiary hearing is required, the petitioner's petition will be denied and this action will be dismissed. The petitioner's motions for judgment on the pleadings and for summary judgment (Docket Entry No. 96, 98) will be denied as moot.

For the reasons explained herein, should the petitioner file a timely notice of appeal from this Order, such notice shall be docketed as both a notice of appeal and an application for a COA, 28 U.S.C. § 2253(c); *Slack*, 529 U.S. at 483; Rule 22(b), Fed. R. App. P., which will not issue, *see Castro v. United States of America*, 310 F.3d 900, 901 (6th Cir. 2002); *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001); *Porterfield v. Bell*, 258 F.3d 484, 485-487 (6th Cir. 2001); *Lyons v. Ohio*

*Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997)(overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977)).

An appropriate Order will enter.

Aleta A. Trauger
United States District Judge